CITY BANK OF DALLAS V. J. C. BOGEL ET AL.

TAXATION—CITY ORDINANCE.—An ordinance of a city imposing a tax on all property, real and personal, within its limits, passed under a charter authorizing the city to tax "capital," does not authorize the levy or collection of a tax on the capital of a bank paid in on its stock, without reference to its losses or gains in business.

APPEAL from Dallas. Tried below before the Hon. George N. Aldridge.

The City Bank of Dallas, claiming to be a bank incorporated by an act of the Legislature of Texas of the 31st of May, 1873, brought this suit on December 21, 1878, to recover of appellees, defendants below, $2,251.94, paid to them under protest as taxes upon the capital of said bank for the years 1874 and 1875.

The bank, which was located in the city of Dallas, claimed that it had rendered and paid, for each of said years, the tax upon all its real estate, and refused to render the capital of the bank outside of said real estate, upon the ground that this was not subject to taxation against the bank, for that the entire capital of the bank was embraced within and represented by the shares of stock, which were, under the law, specific subjects of taxation to the owner, in common with other personal property; that as the representative of this capital was taxed, there was no authority of law for taxing this capital against the bank itself; and also upon the ground

that the city council had not, in its ordinances, levied a tax on capital *eo nomine.*

The Legislature, by an amendatory act incorporating the city of Dallas, passed April 20, 1871, provided that "the city council, by a vote of a majority of the whole number of aldermen, taken by yeas and nays and entered upon their journal, may levy, assess, and collect an annual direct tax upon all property, real and personal, situated and being within the corporate limits of said city, or on any capital, money, or funds used as a basis of operation for any trade or business carried on within the limits of said city, not exceeding three-fourths of one per cent. *ad valorem* for the year 1873, and after that, not exceeding one-half of one per cent." By another act, passed the same year, the city of Dallas was, in addition to the authority before conferred, permitted to have levied and collected an annual *ad valorem* tax for the year 1873 of one-fourth of one per cent., and for the years 1874 and 1875 of not exceeding one-half of one per cent., on all the taxable property—real, personal, and mixed—in said city, to be used and approved and appropriated as other *ad valorem* taxes.

The taxes on the capital of the bank were paid under protest. The shares of the bank consisted of two thousand five hundred shares of $100 each, which, in January, 1874, were all owned by T. C. Jordan, W. E. Hughes, C. C. Slaughter, and J. R. Coats, all of whom lived outside of Dallas. In January, 1875, all the shares were owned by W. E. Hughes, C. C. Slaughter, G. W. Slaughter, and J. R. Coats, of whom Slaughter alone resided in the city. The entire property of the bank was represented by the stock. In January, 1874, $20 on each share was paid in, in cash. At this time the paid-up capital of the bank was $50,000, over $16,000 of which was invested in real estate owned by the bank. In January, 1875, the paid-up capital was $100,000, $24,000 of which was invested in real estate. Taxes were voluntarily paid on the real estate of the bank situated in the city, but

the bank refused to render for taxes its capital. In 1878 it paid on its capital not represented by real estate situated in the city, under protest.

Judgment was rendered for the defendants. The bank appealed.

*Morgan & Gibbs,* for appellant.—The rules of construction for ascertaining legislative intent, only apply when the meaning of the statute is ambiguous or doubtful. When the terms of a statute are plain and obvious, the courts cannot be invoked to construe the terms employed. (Engelking *v.* Van Wamel, 26 Tex., 471; Read *v.* Levy, 30 Tex., 742; Board of Land Commissioners *v.* Weede, Dallam, 361; Thompson *v.* Buckley, 1 Tex., 35; Daggett *v.* Everett, 19 Maine, 373.)

A State may adopt one mode of taxation, and confer upon a city power to tax in a different mode; and a State may confer upon a city authority to tax property which the State itself does not tax; and the only limit on taxation by the city is the Constitution of the State, where the power is granted in charter. (Burr. on Tax., 385, 387; Dill. Mun. Corp., secs. 36, 590, 612, 616; Municipality *v.* Railroad Co., 10 Rob., (La.,) 187; Harrison *v.* Vicksburg, 3 S. & M., (Miss.,) 581; Richmond *v.* Daniel, 14 Grat., 387; 17 Wend., 234; State *v.* City Council, 10 Rich., (S. C., Law,) 240; Aurora *v.* West, 9 Ind., 74; Municipality *v.* Bank, 5 Rob., (La.,) 151; 5 Sneed, (Tenn.,) 475; Adams *v.* Mayor, 2 Head, (Tenn.,) 363.)

Money is personal property. (Hamilton *v.* Ward, 4 Tex., 367; Cooley on Tax., 26–28; 2 Bouv., 333.)

All property is subject to taxation unless specially exempt, and is not exempted by implication. (Cooley on Tax., 146, note 1; Manufacturing Co. *v.* Commonwealth, 69 Penn. St., 137; Commonwealth *v.* Bird, 12 Mass., 443; Bank *v.* State, 10 Penn. St., 442–450; Stetson *v.* Bangor, 56 Maine, 274; Macon *v.* Railroad and Bank Co., 50 Ga., 620; Academy of Arts *v.* Philadelphia Co., 22 Penn. St., 496.)

Capital is not exempt under the law or Constitution of the State, though not taxed *eo nomine*.

The appellant was the owner of the real and personal property constituting its capital.

When the charter authorizes a tax and employs one term to designate property liable to taxation, the ordinance levying the tax may use a synonomous or even different term to designate the property taxed, if both terms of description will equally embrace the property upon which the tax is actually levied. *De minimis non curat lex.* A reasonable construction is always given to an ordinance by the courts. (Harrison v. Vines, 46 Tex., 23; Wills' Mun. Corp., 159, 382; Dill. Mun. Corp., sec. 353; Whitlock v. West, 26 Conn., 406.)

All corporations are taxable when the State has not specially relinquished the right in granting the charter, and the manner and extent of taxation are in the discretion of the Legislature. (Bank v. Commonwealth, 19 Penn. St., 144; Cooley on Tax., 273; Portland Bank v. Apthorp, 12 Mass., 252.)

Acts *in pari materia* are to be construed together, and on this principle it has been held proper, in order to ascertain the meaning of a word used in a charter, to look to a subsequent charter on the same subject in which the same word is used and its definition given.

The charter of 1875, in the portion relating to taxes, (Gen. Laws 1875, secs. 81, 89, pp. 135, 137,) uses the same language as the charter of 1874 to designate what property is subject to taxation, and defines "personal property" to mean "moneys, goods, capital," &c. (Dill. Mun. Corp., sec. 54, note 2.)

*W. E. Hughes*, for appellees, on the authority to levy the tax, cited the following authorities: Aug. & Ames on Corp., sec. 461; Gordon v. Appeal Tax Court, 15 Curt., 338, or 3 How., 147; Salem Iron Factory v. Danvers, 10 Mass., 515; St. Louis Building and Savings Association v. Lightner, 42 Mo., 421; Ontario Bank v. Bunnell, 10 Wend., 195; Boston

Water Power Co. v. Boston, 9 Met., 199; Boston & Sandwich Glass Co. v. Boston, 4 Met., 186; State of Missouri v. Hannibal and St. Joseph Railroad Co., 37 Mo., 265–263; Smith v. Burley, 9 N. H., 423; Gordon v. Mayor of Baltimore, 5 Gill, 231; Nashua Savings Bank v. Nashua, 46 N. H., 389; Hartford Fire Ins. Co. v. Hartford, 3 Conn., 15; American Bank v. Mumford, 4 R. I., 478.

The State having indicated its policy by taxing shares of stock and exempting capital, the term "capital" in the city charter should not be construed to include capital of banks, but capital subject to taxation by the laws of the State. (The State v. Jones, 5 Tex., 385; Bank of Georgia v. Savannah, Dudley, (Ga.,) 132; Paschal's Dig., art. 5264; City of Marshall v. Snediker, 25 Tex., 471.)

GOULD, ASSOCIATE JUSTICE.—Whatever may have been the power of the city council under the different charters in force in 1874 and 1875, our opinion is, that the ordinances of the city were insufficient to authorize the tax on "capital" exacted of appellant. The tax levied by the ordinances was upon "all property, real and personal, within the limits of the city of Dallas." The bank, in common with individuals, was subject to this tax on its property, including its money and credits. The tax exacted was not the tax on property authorized by the ordinances, but a tax on the paid-in capital of the bank, without reference to losses or gains. It does not appear that the term "capital" was used to express the amount of taxable personal property on hand, but that it was used to express the money paid in on their stock by the stockholders. The ordinances of the city contain nothing sufficiently indicating an intention in this way to tax the capital of either individuals or corporations. A merchant in the city was not taxed on the amount of capital originally invested, nor was it prescribed that a corporation should be so taxed. The intention to impose such a tax on the part of the city

should have distinctly appeared from the terms of its ordinances; otherwise the tax was unauthorized.

Because the court below erred, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.